UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY MEADOWS,<br><br>Plaintiff,<br><br>v.<br><br>CW MANUFACTURING, LLC,<br><br>Defendant. | Case No. 24-11753<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]**

CW Manufacturing terminated Timothy Meadows as a Plant Manager shortly after he returned from medical leave. Meadows believes his termination was in retaliation for requesting and utilizing time off under the Family and Medical Leave Act. So he filed this lawsuit on July 8, 2024. (ECF No. 1.) Following discovery, CW Manufacturing (CWM) says it is undisputed that Meadows' position was eliminated for business reasons. Accordingly, CWM filed a motion for summary judgment. (ECF No. 29.)

On the record before the Court, however, CWM has not carried its burden of demonstrating entitlement to judgment as a matter of law. For the following reasons, CWM's motion for summary judgment is DENIED.

**I.**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the facts in the record, and the reasonable inferences that can be drawn from those facts, in the light most favorable to Meadows, and presents them as such below. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**II.**

In August 2021, Timothy Meadows was hired as a Plant Manager at a CWM plant in Northville, Michigan. (ECF No. 29-1, PageID.594.) He was responsible for "enhancing manufacturing performance and financial results" (ECF No. 29-2, PageID.723), and managing the day-to-day operations of several teams (ECF No. 29-1, PageID.594). He reported to Roger Yan, Global VP of Operations, and Lirong "John" Hu, Global President. (ECF No. 29-1, PageID.647; ECF No. 29-9, PageID.876.)

**Meadows Medical Time Off**

A little over a year into his tenure, Meadows experienced several medical needs. He requested the following medical time off:

- October 2022: Meadows requested three weeks off for an upcoming surgery; he used accrued paid time off to recover. (ECF No. 29-1, PageID.614–615.)
- January 2023: Meadows requested a few days off because his surgical wounds became infected; he used accrued paid time off to recover. (*Id.* at PageID.621.)

- May 2023: Meadows requested three days off and several weeks of remote work for gallbladder removal surgery. (*Id.* at PageID.622–623.)[1]

- October 6, 2023: Meadows requested five to seven days of medical leave for an upcoming surgery in November. (ECF No. 29-10.) With no remaining paid time off, he was granted unpaid FMLA leave. (*Id.*) Meadows was on FMLA leave from November 7–15, 2023. (ECF No. 29-1, PageID.611, 634.)

**Personnel Changes**

As Meadows underwent various health challenges throughout 2023, CWM underwent personnel changes.

In June 2023, shortly after Meadows returned from medical leave for his gallbladder surgery, CWM promoted Gary Moss to Operations Manager. (ECF No. 29-7, PageID.750–752, 757.) Moss had previously worked as a Production Consultant, but now, in this role, Moss reported directly to Meadows, assisting with product launches, efficiencies, and supervising employees. (*Id.* at PageID.766.)

In late September/October 2023, CWM's Global President, Lirong "John" Hu, invited a consultant, James Gray, to tour the manufacturing plant, identify inefficiencies, and offer his "personal assessment of the facility." (ECF No. 29-8, PageID.792–793.) After the tour, Gray shared his "questions and assessment" with Hu (Global President), Yan (Global VP of Operations), and Thomas Morris (Engineering Manager). (ECF No. 29-8, PageID.793–794.) Gray pointed out that the Plant Manager position (Meadows' job) and the Operations Manager position (Moss' job) were redundant. (*Id.* at PageID.823 ("They gave me a[n] overview, and that was

[1] It is unclear whether Meadows used paid time off or FMLA leave for this medical leave. CWM's FMLA policy required employees to use all paid vacation, personal, or sick leave prior to being eligible for up to 12 weeks of unpaid leave. (ECF No. 29-5, PageID.737.)

the first thing I asked John Hu is why do you have two people doing the same job."); *id.* at PageID.824 ("I just said you don't need both positions.").)

After his initial tour, CWM hired Gray as a formal consultant on November 2, 2023, just five days before Meadows started his FMLA leave. (ECF No. 29-8, PageID.817–818.) When Gray formally joined the team, Hu (Global President) asked whether he still believed "both an operations manager[/]director and a plant manager" were not needed, and Gray reiterated that CWM "do[es] not need two levels of management for a twenty-five-million-dollar plant." (*Id.* at PageID.821.)

**Meadows is Terminated**

Meadows returned from FMLA leave on November 15, 2023, but continued to work four hours in person and four hours remote due to "medical restrictions" from his surgery. (ECF No. 29-1, PageID.634, 654–655.) Around that same time, CWM notified Gray that he would be promoted to Vice President and General Manager of North America. (ECF No. 29-8, PageID.819, 821.)

Two weeks later, on November 30, 2023, Meadows was terminated. (ECF No. 29-14, PageID.965.) His termination letter stated that his position was eliminated because "it was determined that there are simply too many layers of leadership for an organization our size." (*Id.*) It also noted that "new program launches" had not achieved success and CWM was "still lacking an overall sense of team cohesiveness." (*Id.*)

The record is unclear as to who made the decision to terminate Meadows. David Iacobelli (HR director) says it was possibly Hu or Gray. (ECF No. 29-13,

PageID.922–923.) Gray says while he identified the redundancy (ECF No. 29-8, PageID.824), he denied being the one to suggest terminating Meadows. (*Id.* at PageID.815; *id.* at PageID.820 ("Q. So at what point in time did you . . . figure out that Mr. Meadows was going to be the first employee RIFfed? A. The day that it happened.") (Gray deposition).) Moss testified that he found out about Meadows' termination when it was announced at the all-employee meeting. (ECF No. 29-7, PageID.773.)

CWM and Meadows had a severance agreement in place (ECF No. 29-4), which CWM paid out for several months until it determined Meadows had breached a non-solicitation agreement (ECF No. 29-17).

"RIF Position Eliminated" was CWM's stated reason for terminating Meadows. (ECF No. 29-18, PageID.974.) CWM says it terminated seven other employees pursuant to this RIF in September 2024—ten months after Meadows' termination—with four more terminated in October 2024, and an additional eight terminated in early 2025.[2] (*Id.*)

CWM believes the RIF protects it from liability. Meadows believes his firing was not part of a RIF, but instead unlawful retaliation for taking FMLA leave. What is missing from the record, however, even assuming the legitimacy of the RIF, is any explanation of why Meadows (Plant Manager) as opposed to Moss (Operations

[2] The VP of Finance was fired one month after Meadows, but his position was not listed as "RIF Position Eliminated" but rather "Position Eliminated." (ECF No. 29-18, PageID.974.)

Manager) was the one terminated. And this factual deficiency cannot be cured through oral argument, *see* E.D. Mich. LR 7.1(f).[3] (ECF No. 1.)

**III. FMLA Retaliation**

The FMLA grants eligible employees up to twelve weeks of unpaid leave each year for various qualifying circumstances. 29 U.S.C. § 2612(a). The statute prohibits an employer from discriminating against an employee who takes leave under the Act. 29 U.S.C. § 2615(a)(2),(b). "A claim for retaliation and discrimination under the FMLA are essentially the same." *Horton v. Grede LLC*, No. 22-10701, 2024 WL 5357271, at *5 (E.D. Mich. Sept. 4, 2024) (collecting cases). "Specifically, [a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave, nor can they use the taking of FMLA leave as a negative factor in employment actions." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 376 (6th Cir. 2017) (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 403 (6th Cir. 2003)).

In this respect, Meadows believes that he was terminated for taking FMLA leave, although he does not have direct evidence of FMLA retaliation. (ECF No. 34, PageID.1370 ("Meadows concurs with CW's assertion that there is no direct evidence of retaliation against Meadows").) Thus, the Court applies the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Paris v. MacAllister Mach. Co., Inc.*, 175 F.4th 787, 797 (6th Cir. 2026).

[3] The parties agreed to dismiss a breach of contract claim. (ECF No. 19.) Only the FMLA retaliation claim remains.

Under that framework, Meadows has the burden of establishing a *prima facie* case of FMLA retaliation. *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 408–09 (6th Cir. 2014). If he does so, "the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for terminating the plaintiff." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802–04)). From there, Meadows must show that CWM's proffered reason for terminating him was merely a pretext for retaliation. *Id.*

### A. *Prima Facie* Case

There are four elements of a *prima facie* case of FMLA retaliation:

> (1) An employee was "engaged in protected activity";
>
> (2) his employer "knew [he] was engaged in protected activity";
>
> (3) his employer "took an adverse employment action against [him]"; and
>
> (4) "there was a causal connection between the protected activity and the adverse employment action."

*Paris*, 175 F.4th at 797 (internal citation omitted). The "plaintiff's burden in establishing a *prima facie* case is not intended to be an onerous one." *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (citing *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir. 2001)).

The parties do not dispute that Meadows took FMLA leave, that this constituted protected activity, and that he suffered an adverse action (*i.e.* termination) shortly after returning from that leave. But the parties debate the notice and causation elements.

Start with notice. Meadows sent an email to HR and his two managers (Yan and Hu) on October 6, 2023, explaining that he was taking FMLA leave in November

2023 and attaching the FMLA paperwork. (ECF No. 29-10, PageID.883; ECF No. 29-11, PageID.885–888.) CWM contends there is no evidence that Meadows "ever discussed his November 2023 FMLA leave with any decisionmaker responsible for eliminating his position." (ECF No. 29, PageID.568.) But CWM never identifies the "responsible decisionmaker" who terminated his employment. And Meadows notified all possible candidates.[4] (ECF No. 29-10, PageID.883 (Meadows' email to HR, his manager (Yan), and global president (Hu)); ECF No. 29-9, PageID.876 (CWM organizational chart).) Thus, there is at least a genuine dispute of material fact on the notice element. *Thompson v. Chase Bankcard Servs., Inc.*, 737 F. Supp. 2d 860, 872 (S.D. Ohio 2010) (finding *prima facie* case of FMLA retaliation claim met where plaintiff e-mailed "at least one decision-maker" about her leave).

Next, causation. Meadows contends, over CWM's objection, that because his return from FMLA leave and his firing occurred during the same month, that temporal proximity raises an inference of a causal connection. (*Compare* ECF No. 34, PageID.1373); *Stein v. Atlas Indus., Inc.*, 730 F. App'x 313, 319 (6th Cir. 2018) (ten weeks between FMLA leave and adverse activity indicates temporal proximity); *Judge*, 592 F. App'x at 409 (two to three months), *with* ECF No. 36, PageID.1658).)

True, the Sixth Circuit has cautioned lower courts against "drawing an inference of causation from temporal proximity alone." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). But it still means something—it is "indirect

[4] Meadows did not notify Gray about his FMLA leave, but CWM has repeatedly stated that Gray was not a decisionmaker. (ECF No. 29, PageID.561.)

evidence of a causal connection at the *prima facie* stage." *Campbell v. Costco Wholesale Corp.*, No. 12-00306, 2013 WL 5164635, at *7 (M.D. Tenn. Sept. 12, 2013) (collecting cases). And Meadows points to other evidence too, like CWM's decision to retain Moss (the manager not on FMLA leave) and to promote Gray to VP. (ECF No. 29-1, PageID.647.)

CWM challenges this timeline, arguing that CWM invited Gray to visit the plant, and thus identified the need for a RIF, before Meadows went on leave. But, as explained below, even if the RIF was in place before Meadows went on leave, CWM did not explain why it selected Meadows (the FMLA employee) over some other employee, like Moss, for termination. And drawing all inferences in favor of Meadows, CWM could have hired Gray after Meadows announced his FMLA leave, and then promoted him while Meadows was on leave. (*Compare* ECF No. 29-10, PageID.882 (Meadows' October 6, 2023, email announcing upcoming FMLA leave), *with* ECF No. 29-8, PageID.793 (Gray's first visit to the plant was "last week of September or the first week of October [2023.]"), and *id.* at PageID.791 (Gray was promoted to "Vice President and General Manager of North America" around "middle of November [20]23").)

Meadows also says he felt "alienated" after returning from leave, which serves as additional causation evidence. *See Hartman v. Dow Chem. Co.*, No. 13-14774, 2014 WL 7338722, at *5 n.5 (E.D. Mich. Dec. 22, 2014) ("Plaintiff can introduce evidence of her subjective feeling" that there was "a different atmosphere" upon her return "because she has already established a causal connection

through temporal proximity."). So temporal proximity coupled with the other evidence marshalled by Meadows is enough to establish causation at this stage.

Therefore, Meadows has made a *prima facie* showing of FMLA retaliation.

**B. Legitimate, Non-retaliatory Reason**

Now the burden shifts to CWM to articulate a legitimate, non-retaliatory reason for terminating Meadows.

**1. Reduction in Force**

CWM points to Meadows' termination letter as articulating a legitimate, non-retaliatory reason for terminating him: CWM's reduction in force. The letter states:

> CWM has not been able to achieve success in new program launches and is still lacking an overall sense of team cohesiveness. As a result, CWM is going through a change of leadership. In doing so it was determined that there are simply too many layers of leadership for an organization our size.

(ECF No. 29-14.)

CWM asserts these reasons are true. It had experienced difficulties, *i.e.*, the new product launch losing "$500,000 per month." (ECF No. 29-12, PageID.892.) It had undergone a leadership change, *i.e.*, expanding Gray's role to VP. (ECF No. 29, PageID.571; ECF No. 29-8, PageID.791.) It brought on Gray to "[r]eview the overall product and processes, help plant personnel create a recovery plan to get to a minimum breakeven point and a path to positive returns." (ECF No. 29-12, PageID.892.) In doing so, Gray identified redundancies in leadership—the Plant Manager and Operations Manager roles. (ECF No. 29, PageID.559; ECF No. 29-8, PageID.821.) Plus, CWM terminated other employees pursuant to a RIF, albeit 10 to 15 months later. (ECF No. 29-18, PageID.974 (listing seven employees terminated in

September 2024; four in October 2024; four in January 2025; and four in February 2025).)

While CWM provided a legitimate reason for eliminating a management position, it has not explained why it fired Meadows specifically. Recall that CWM hired Gray, a consultant, and Gray identified a redundancy—he believed the Plant Manager (Meadows) and the Operations Manager (Moss) were occupying substantially similar roles. But what is missing from the record is any explanation for why Meadows (the manager on FMLA leave), was chosen for the RIF and not Moss, the other redundant manager.

Without such an explanation, CWM has not proffered a legitimate non-discriminatory reason for firing Meadows. As the Sixth Circuit explained:

> Viewing [Plaintiff]'s termination as part of an RIF exposes a flaw in [Defendant]'s stated reason: it does not specify why [Plaintiff], rather than another employee in the modeling department, was terminated. In other areas of employment discrimination law, we have required employers to explain 'why [the plaintiff] was chosen as the object of the reduction in force.'

*Bell v. Prefix, Inc.*, 321 F. App'x 423, 428 (6th Cir. 2009) (collecting cases and applying the holdings to FMLA claims). Indeed, "in a RIF situation, the employer must specify why this particular employee, as opposed to any other employee, was terminated." *Smith v. City of Niles*, No. 10-463, 2011 WL 13186008, at *9 (W.D. Mich. Sept. 29, 2011), *aff'd*, 505 F. App'x 482 (6th Cir. 2012) (citing *Bell*, 321 Fed. App'x at 428.)

In FMLA retaliation cases involving a RIF, the company must specify some objective reason for terminating the plaintiff when there are other similarly situated candidates who survived the reduction. *See, e.g.*, *Roll v. Bowling Green Metalforming,*

*LLC*, 457 F. App'x 458, 460 (6th Cir. 2012) (RIF and "objective criteria such as skills, performance, work history, and overall ability."); *Tillotson v. Manitowoc Co.*, Inc., 727 F. App'x 164, 168 (6th Cir. 2018) (RIF and lowest rating of product sales managers); *Winterhalter v. Dykhuis Farms, Inc.*, No. 10-385, 2011 WL 2148524, at *3 (W.D. Mich. May 31, 2011), *aff'd*, 489 F. App'x 896 (6th Cir. 2012) (RIF and low performance and high salary); *Schrack v. R+L Carriers, Inc.*, No. 10-603, 2012 WL 2309365, at *11 (S.D. Ohio June 18, 2012) (RIF and lowest seniority); *Grindstaff v. Sun Chem. Corp.*, No. 09-450, 2010 WL 4878953, at *9 (S.D. Ohio Nov. 22, 2010) (RIF and low score on RIF selection matrix).

By simply stating that the company was going through a RIF based on redundancies in leadership, CWM did not address why it selected Meadows instead of Moss (or someone else) for a RIF termination. Nor does any reason appear in the record. There are no objective criteria used to assess Meadows. (ECF No. 29-13, PageID.923.) There is nothing to indicate Meadows had poor performance. (*See* ECF No. 34-6, PageID.1439–1440 ("Q. Any sort of reports or outside issues that would lead you to believe [Meadows] wasn't being effective in his role? A. Not that I saw, no.").) In fact, he received multiple performance bonuses. (ECF No. 29-1, PageID.689; ECF No. 29-13, PageID.924.) While CWM experienced a troubled product launch, the company seems to credit the former engineering manager, Abhishek Patel, with that failure, not Meadows. (ECF No. 29-13, PageID.942 ("he was a large reason for the . . . failed launch, as the lead engineer . . . .") (Iacobelli interview).) And, whether to his credit or not, when Patel left, the product launch came under Meadows'

leadership and seemed to have improved. (ECF No. 29-7, PageID.775 ("Q. So when Mr. Meadows was terminated in November of [20]23, had you noticed an improvement in the 220D program since you came on in June? A. Yes.") (Moss deposition).)

Indeed, a jury could question whether there was a RIF at all. For one, there are no documents substantiating a RIF. (ECF No. 29-13, PageID.921.) For another, at least one higher up at the company did not know there was a RIF and thought Meadows left "voluntarily." (ECF No. 34, PageID.1363.) Nor does CWM explain why it waited ten months after Meadows left to terminate other employees through a RIF.

Thus, because CWM did not explain its reason for selecting Meadows pursuant to a RIF, a reasonable jury could find that the true reason for his termination was retaliation for taking FMLA leave. This is the case whether analyzed under the legitimate non-discriminatory reason or pretext prongs.

**2. Severance Package**

CWM also argues that by accepting his severance package, Meadows admits his termination was not due to FMLA retaliation. (ECF No. 29, PageID.572.) The addendum to Meadows' employment contract sets out the following terms:

> Severance package will be only provided based on the following eligible conditions
>
> Employment separation is due to
>
> - Change ownership of the company
> - Downsizing of company due to business strategic development
> - Financial insolvency of the company

(ECF No. 29-4, PageID.731.)

But again, it can be possible that the company was downsizing due to strategic development and also that it selected Meadows for termination due to retaliation.

Plus, "[d]etermining whether an employee's waiver of their rights was valid is a question of federal common law." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 617–18 (6th Cir. 2024) (citing *McClellan v. Midwest Machining, Inc.*, 900 F.3d 297, 302–03 (6th Cir. 2018)). With no release or other waiver language in the contract barring suit, the Court will not construe the severance agreement as doing so. CWM is correct, however, that Meadows cannot have it both ways: He cannot collect both severance payment and damages for FMLA retaliation. In the event Meadows prevails in this lawsuit, he must return the severance payment.

**IV.**

Accordingly, Defendant's motion for summary judgment (ECF No. 29) is DENIED.

IT IS SO ORDERED.

Dated: August 31, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE